IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PAMELA R., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, <br> Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:20-cv-00905 <br><br><br> MEMORANDUM DECISION <br> & ORDER <br><br><br> Magistrate Judge Dustin B. Pead |

### INTRODUCTION[1]

Plaintiff Pamela R.[2] seeks judicial review of the Commissioner of Social Security's Decision denying her claim for disability insurance benefits and supplemental security income under the Social Security Act. After careful review of the administrative record, the parties' briefs and arguments and the relevant law, the undersigned concludes that the Commissioner's

---

[1] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 17); *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

Decision is supported by substantial evidence and free of harmful legal error. Accordingly, as set forth herein, the Commissioner's Decision is AFFIRMED.

## BACKGROUND

On December 6, 2017, Plaintiff Pamela R. ("Plaintiff") applied for disability benefits and supplemental security benefits under Titles II and XVI of the Social Security Act. Plaintiff alleges a disability onset date of October 31, 2015, and an amended onset date of July 6, 2017. (Tr.[3] 21.) Plaintiff's claims were initially denied on June 25, 2018, and upon reconsideration on November 15, 2018. (*Id.*) Thereafter, Plaintiff requested an administrative hearing which was held on May 13, 2020, before Administrative Law Judge ("ALJ") Gerald R. Bruce. (*Id.*); 20 C.F.R. § 404.929 *et seq.*; 20 C.F.R. § 404.936(c).[4]

On June 3, 2020, consistent with the five-step sequential evaluation process, the ALJ issued a written decision ("Decision"). (Tr. 21-32); *see* 20 C.F.R. § 416.920 (describing the five-step evaluation process). At step two of the evaluation process, the ALJ found that Plaintiff had the severe impairments of diabetes, degenerative disc disease and obesity and the non-severe impairment of endometriosis. (Tr. 23-24); *see* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). After determining that Plaintiff's impairment or combination of impairments did not meet or

---

[3] Tr. refers to the transcript of the administrative record before the Court.

[4] All citations are to the 2019 edition of Part 404 of the Code of Federal Regulations (C.F.R.) which governs disability claims. Substantially identical provisions in Part 416, which govern SSI claims are omitted for brevity.

equal a listed impairment, *see* 20 C.F.R. § 404, Subp P. Appx 1, the ALJ concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light work"[5] and determined that she could:

> frequently climb ramps and stairs; she can occasionally climb ladders and scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; she can occasionally be exposed to hazards such as unrestricted heights and dangerous moving machinery. Due to physical pain, she can perform goal-oriented but not assembly line-paced work.

(Tr. 26-27.)

At step four, based on Vocational Expert ("VE") testimony, the ALJ found that Plaintiff could perform her past relevant work as a fast food services manager and data entry clerk. (Tr. 30, Tr. 65); *see* 20 C.F.R. § 404.1565; 20 C.F.R. § 416.965. The ALJ also determined that Plaintiff could perform additional representative jobs, available in significant numbers in the national economy, of office clerk, mail clerk and inspector or hand packager. (Tr. 31, Tr. 65.) As a result, the ALJ denied the application for disability benefits concluding that Plaintiff was not disabled under the Act.

On November 2, 2020, the Appeals Council denied Plaintiff's request, making the ALJ's June 2020 Decision the Commissioner's final Decision for purposes of review. (Tr. 1-7); 20

---

[5] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10.

3

C.F.R. § 404.981; 20 C.F.R. § 416.1481. Plaintiff's December 28, 2020, appeal to this court followed. (ECF No. 2); *see* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In conducting its review, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin,* 767 F. 3d 951, 954 (10th Cir. 2014).

Substantial evidence review is deferential, and the agency's factual findings are considered "conclusive" if they "are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504, 508 (2019) (*quoting* 42 U.S.C. § 405(g)). As the Supreme Court recently confirmed, the substantial evidence threshold "is not high" and deference should be given to the presiding ALJ "who has seen the hearing up close." *Id.* at 1154, 1157. Substantial evidence is defined as "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (internal quotation omitted).

## DISCUSSION

On appeal, Plaintiff raises two main arguments. First, Plaintiff asserts the ALJ should have found additional severe impairments that warranted further limitations in her RFC. Second, Plaintiff claims the ALJ erred in failing to resolve a conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles. Each argument is addressed further herein.

4

1.     **The ALJ Properly Assessed Plaintiff's Endometriosis and Neck Pain**

At Step 2 of the sequential evaluation, the ALJ found Plaintiff's diabetes, degenerative disc disease and obesity to be severe impairments. Plaintiff asserts the ALJ erred, however, by not finding her endometriosis and neck pain to also be severe impairments.

At Step 2 the ALJ is tasked with determining whether a claimant has a medically determinable impairment that is severe, or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. (Tr. 22); *see* 20 C.F.R. 404.1521. Alternatively, an impairment or combination of impairments is considered "not severe" when medical and other evidence "establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (*Id.*); *see* 20 C.F.R.§ 404.1522(a). Generally, the failure to find "a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016).

a.     **Endometriosis**

Plaintiff asserts the ALJ erred when he concluded that her endometriosis was not a severe impairment. The Court disagrees. In his Decision the ALJ acknowledged Plaintiff's endometriosis diagnosis, but characterized it as "non-severe" because, based on the record, her endometriosis did not cause significant limitation in Plaintiff's ability to perform basic work activities. (Tr. 25; Tr. 429-80.) In turn, even as a non-severe impairment, the ALJ properly discussed Plaintiff's endometriosis when assessing her RFC. *See* 20 C.F.R. § 404.1545(e)

(requiring the ALJ to discuss severe and non-severe impairments when assessing claimant's RFC). Further, consistent with the conclusion that Plaintiff's endometriosis was non-severe, the ALJ relied upon records showing "mild findings" and establishing Plaintiff's examinations as largely normal with no abdominal distention or swelling. (Tr. 28-29; Tr. 578; Tr. 650-51; Tr. 559-60; Tr. 582-604; Tr. 668-69; Tr. 677-78; Tr. 695-96; Tr. 730; Tr. 733; Tr. 735; Tr. 738; Tr. 741; Tr. 744; Tr. 927; Tr. 933; Tr. 936; Tr. 939; Tr. 942; Tr. 945; Tr. 948; Tr. 951; Tr. 954; Tr. 957; Tr. 960; Tr. 963).

    b.  **Neck Pain**

The ALJ did not specifically address Plaintiff's neck pain or cervical degenerative disc disease at Step 2 of the sequential analysis.[6] The ALJ did, however, address Plaintiff's neck pain as part of Plaintiff's RFC. *See* (Tr. 27, "In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . .:); *see* (Tr. 27, Plaintiff indicates problems with "neck pain, but limitations [are] primarily related to low back pain . . . ."); *see* (Tr. 28, discussing cervical spine MRI findings as showing disc protrusion and canal narrowing); *see* (Tr. 28-29, discussing numerous physical examinations). Further, the ALJ specifically discussed findings from consultative examiner Dr. Richard Ingebretsen ("Dr. Ingebretsen") related to

---

[6] At Step 2, the ALJ found Plaintiff's "degenerative disc disease" to be a severe impairment but did not specify if he found Plaintiff's lumbar or cervical degenerative disc disease to be severe. Consequently, it is possible that the ALJ addressed Plaintiff's cervical degenerative disc disease at Step 2 and determined that it was a severe impairment. However, as discussed herein, irrespective of the confusion surrounding these terms, the ALJ discussed Plaintiff's cervical disc disease throughout the RFC analysis and as a result there was no error. *See Allman,* 813 F.3d at 1330.

Plaintiff's neck pain. In doing so, the ALJ noted that Dr. Ingebretsen found "numerous inconsistencies in claimant's presentation, including different pain reactions during distraction. . . ." and noted that Plaintiff's neck exam showed a reduced range of motion to the right although her "neck was not tender to the touch . . . .[even though she] expressed pain when the doctor pressed on the area." (Tr. 28-29; Tr. 702-04.)

At Step 2, as long as a claimant has at least one "severe" impairment, the ALJ will continue with the sequential evaluation process. *See* 20 C.F.R. § 404.1521. Here, having found severe impairments at Step 2, the ALJ went on to consider Plaintiff's RFC. As a result, "a failure to include the [cervical disc disease] as a severe impairment would not have affected the outcome" and under these circumstances any error at Step 2 would be harmless. *Smith v. Colvin,* 821 F.3d 1264, 1267 (10th Cir. 2016) (*citing Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the [ALJ] finds that at least one other impairment is severe.")); *see also Johnson v. Colvin,* 2016 U.S. LEXIS 170634 at * 23 (W.D. Okla. Nov. 18, 2016) ("A failure to include an impairment at step two is harmless if the ALJ finds at least one severe impairment, proceeds past step two and then takes into effect the combined limiting effects of all medically determinable impairments, severe or not, at the remaining steps.") (citation omitted).

Overall, the ALJ discussed Plaintiff's endometriosis and neck pain throughout the sequential evaluation process and substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not cause any work-related limitations. As a result, Plaintiff fails to establish reversable error at Step 2 of the sequential evaluation process.

### 2.  There Was No Apparent Conflict In The VE Testimony

The ALJ's RFC findings include the conclusion that due to physical pain the Plaintiff "can perform goal-oriented but not assembly line-paced work." (Tr. 27.) At the May 13, 2020, hearing, based on his RFC findings, the ALJ presented a hypothetical question to the Vocational Expert ("VE") regarding the type of work that could be performed by an individual with similar limitations. In response, the VE testified that an individual with a similar RFC could perform Plaintiff's past relevant work as a fast-food services manager and a data entry clerk. (Tr. 63.) Additionally, the VE testified that such an individual could also perform additional jobs that exist in significant numbers in the national economy; including, office clerk, mail clerk and inspector/hand packager. (Tr. 63.) Based thereon, the ALJ inquired if the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The VE indicated the testimony was consistent, except that the VE's conclusions regarding absenteeism and employees being off task were based on her experience and not the DOT.[7] (Tr. 64.)

Plaintiff now asserts error at Step 4 of the sequential evaluation process based on the ALJ's failure to inquire about conflicts between the jobs the VE indicated Plaintiff could perform and the DOT. Specifically, Plaintiff appears to argue that the term "goal-oriented" is inconsistent with the "semi-skilled" and "skilled. . . fast-paced" jobs offered by the VE, thereby creating an unresolved conflict between the VE's testimony and the DOT.

---

[7] As set forth on the administrative hearing record,

"Q:  Is your testimony consistent with information found in the DOT?
 A:  Yes, except for off task and absenteeism is not addressed. That portion is based on my experience." (Tr. 64.)

The ALJ "is required to elicit a reasonable explanation from the [VE] evidence that resolves any 'apparent conflict' between (1) the RFC that the vocational expert relied on and (2) the DOT." *Sagastume v. Kijakazi,* 2021 U.S. Dist. LEXIS 206021 at *14 (D.N.M. Oct. 26, 2021) (*citing Hackett v. Barnhart,* 395 F.3d 1168, 1174-76 (10th Cir. 2005)); *see also* SSR 00-4p, 2000 SSR LEXIS 8 ("When there is an apparent unresolved conflict between the [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled."). Yet not every discrepancy is an "apparent unresolved conflict" that requires further exploration by the ALJ. *See Segovia v. Astrue,* 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) ("'[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation.'") (*quoting Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000)).

Here, Plaintiff provides no support for her claim that her past relevant work is "fast paced." Instead, Plaintiff reaches this conclusion by simply relying upon her own interpretation of the term "goal oriented" and the DOT's narrative descriptions. *See* (ECF No. 36 at 4, "Given the physical and mental requirements of those jobs, (according to the DOT and the Department of Labor's O*Net), it is the Claimant's position that these jobs are not goal-oriented. . . ."); *see also* DOT § 185.137-010 (food clerk); DOT § 203.582-054 (data entry clerk). The VE, however, testified that the jobs were goal oriented and did not require assembly-line paced work and there is nothing in the DOT narrative descriptions that indicates the jobs are fast-paced or assembly-

line work. [8] (Tr. 63); see C.F.R. § 414.1566(e) (ALJ may use vocational expert to determine whether claimant's work skills can be used in other work and the specific occupations in which they can be used). As a result, it was reasonable for the ALJ to rely upon the VE's testimony and Plaintiff's speculative interpretation of relevant terms does not create an apparent conflict in the VE's testimony that the ALJ is required to resolve. *See Thompson v. Colvin,* 551 F. App'x 944, 949 (10th Cir. 2014) (unpublished) (rejecting plaintiff's claim that the vocational expert's testimony conflicted with the DOT where "the VE testified that the jobs he identified were consistent with a hypothetical person with [the plaintiff's] impairments and the DOT.").

In the alternative, even assuming error at Step 4, the ALJ determined that Plaintiff could perform three alternative jobs at Step 5. (Tr. 30-31.) As a result, the ALJ's Step 5 finding independently supports the conclusion that Plaintiff was not disabled. Although Plaintiff argues she could not perform the alternate occupations because they were not "goal-oriented," her assertion also lacks support and there is no evidence that the alternative jobs fail to align with the DOT, the hypothetical question posed to the VE or the RFC.

Thus, finding no apparent conflict in the vocational testimony for the ALJ to resolve, the ALJ reasonably relied on the VE as an appropriate evidentiary source and the ALJ's vocational analyses at Steps 4 and 5 of the evaluation are affirmed as supported by substantial evidence of record. *See* 20 C.F.R. §§ 404.1560(b)(2) (ALJ may rely on vocational expert to "offer relevant evidence within his or her expertise or knowledge").

---

[8] At the administrative hearing Plaintiff's counsel did not ask the VE if the jobs identified were goal-oriented, fast-paced or assembly line paced.

## CONCLUSION

Accordingly, for the reasons stated, the Court affirms the ALJ's reasonable findings as supported by substantial evidence and affirms the Commissioner's decision denying Plaintiff's claim for benefits.

**IT IS SO ORDERED**.

DATED this 11th day of July 2022.

                                                 DUSTIN B. PEAD
                                                 United States Magistrate Judge